**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J.  Fisher, Jr.                                                                    Elisabeth A. Shumaker
Clerk                                                                                               Chief Deputy Clerk

July 24, 2000


**TO:**   ALL RECIPIENTS OF THE OPINION

**RE:**   99-1298, *U.S. v. Caldwell*
              Filed on July 18, 2000

The opinion filed in this matter contains a clerical error on page nine, paragraph two of the decision.  The sentence originally read:  "...such as whether the case is 'so unusual' at to remove it from the 'heartland of cases..."

The word *at* should be replaced with the word *as*.  The corrected sentence should read as thus:  "...such as whether the case is 'so unusual' as to remove it from the 'heartland of cases..."

Please make the correction to your copy of the opinion.

Sincerely,

Patrick Fisher, Clerk of Court


By:
                  Daniel R. Sosa, Jr.
                  Deputy Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.

DEDRICK SHAWN CALDWELL,

    Defendant-Appellee.

No. 99-1298

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 94-CR-210-Z)

Sean Connelly, Assistant United States Attorney (Thomas L. Strickland, United States Attorney, and David M. Gaouette, Assistant United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff-Appellant.

E. Richard Toray, Denver, Colorado, for Defendant-Appellee.

Before **TACHA**, **HOLLOWAY**, and **BALDOCK**, Circuit Judges.

**BALDOCK**, Circuit Judge.

    A jury convicted Defendant Dedrick Shawn Caldwell in 1994 of unlawful possession with intent to distribute and distribution of more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). The district court, applying a guideline range

of 262 to 327 months imprisonment based on a career offender offense level of 34 (resulting from application of an unenhanced statutory maximum penalty of forty years) and a criminal history category of VI, sentenced Defendant to 262 months imprisonment. On cross-appeals, we upheld Defendant's conviction, but, at the Government's behest, remanded for resentencing within a guideline range of 360 months to life imprisonment based on a career offender offense level of 37 (resulting from application of an enhanced maximum statutory penalty of life imprisonment). United States v. Caldwell, 1996 WL 185749 at *6-7 (10th Cir. April 17, 1996) (unpublished) (Caldwell I) (relying on United States v. Novey, 78 F.3d 1483, 1486-88 (10th Cir. 1996)).[1]

On remand, the district court disagreed with our decision in Caldwell I and declined to sentence Defendant as a career offender. See U.S.S.G. § 4B1.1 (1994).[2] Instead, the district court reconsidered its earlier denial of Defendant's motion for a downward departure and granted Defendant's renewed motion for a downward departure.[3] The court departed to a guideline range of 140 to 175 months based on

---

[1] In Caldwell I, 1996 WL 185749 at *6, we noted that prior to trial, the government filed a notice under 21 U.S.C. § 851(a)(1) signaling its intention to seek enhanced penalties against Defendant due to a prior state drug conviction. The effect of this notice was to raise the statutory maximum penalty for the charged offense from forty years to life imprisonment. See 21 U.S.C. § 841(b)(1)(B).

[2] Because Defendant was originally sentenced in December 1994, all citations to the sentencing guidelines are to the 1994 version of the United States Sentencing Commission, Guidelines Manual (Nov. 1994), unless otherwise noted.

[3] Defendant's original motion for a downward departure from the career

(continued...)

2

an offense level of 28 (the applicable offense level without the career offender enhancement) and a criminal history category of VI. The court sentenced Defendant to 175 months imprisonment. According to the court, Defendant's career offender status as calculated under the guidelines "significantly overrepresent[ed]" the seriousness of his criminal history. See id. § 4A1.3. The Government again appeals Defendant's sentence, this time claiming the district court erroneously departed from the career offender guideline range we endorsed in Caldwell I of 360 months to life imprisonment. We exercise jurisdiction under 18 U.S.C. § 3742(b), and again remand with directions to resentence.

I.

Defendant's criminal history as reported in his presentence report and adopted by the district court is as follows–

> 1. On November 27, 1983, Defendant, age eighteen, was arrested and charged in the Los Angeles, California, Superior Court with two counts of strong armed robbery. The victim sustained a broken nose and cracked ribs during the incident. Defendant was subsequently convicted of a misdemeanor charge of receiving stolen property and sentenced to three

---

[3](...continued)
offender category alleged two basis for departure: (1) the career offender category overrepresented his criminal history, and (2) the Sentencing Commission did not adequately consider the disproportionate treatment of drug offenders sentenced to the same penalty range for offenses involving drug quantities of different magnitudes. Caldwell I, 1996 WL 185749 at *6. On appeal, we noted that "the district court recognized its discretionary authority to depart downward from the guideline range, but found no basis for doing so." Id. We concluded that we lacked jurisdiction to review the district court's discretionary refusal to depart. Id.

years probation.  In February 1986, Defendant's probation was revoked and he was sentenced to one year imprisonment.

2.  On November 19, 1984, Defendant, age nineteen, was arrested and charged in the Los Angeles, California, Superior Court with one count of felony robbery and one count of false imprisonment with violence, menace, fraud, and deceit.  Defendant and an accomplice reportedly approached the victim in his car, held a large hunting knife to his throat, and threatened to kill him.  Defendant pled guilty to felony robbery and was sentenced to three years probation.  In September 1987, Defendant's probation was revoked and he was sentenced to three years imprisonment.

3.  On November 22, 1985, Defendant, age twenty, was arrested and charged in the Pasadena, California, Municipal Court with misdemeanor use of controlled substances.  Defendant pled nolo contendere and was sentenced to three years probation.

4.  On November 29, 1985, Defendant, age twenty, was arrested and charged in Los Angeles, California, Superior Court with felony sale of a controlled substance.  Defendant reportedly approached an undercover police officer and sold him a rock of cocaine for $20.00.  Upon conviction, Defendant was sentenced to three years probation.  In May 1987, Defendant's probation was revoked and he was sentenced to three years imprisonment.

5.  On March 6, 1987, Defendant, age twenty-one, was arrested and charged in Los Angeles, California, Superior Court with felony possession of cocaine for sale, enhanced by a prior narcotics conviction.  Defendant reportedly was observed selling rock cocaine to another individual.  When Defendant was arrested, additional cocaine was found on his person.  Defendant pled guilty and was sentenced to eight years imprisonment.

6.  On March 3, 1994, Defendant, age twenty-eight, was arrested and charged in Arapahoe County, Colorado, Court with misdemeanor harassment.  Defendant's girlfriend reported that Defendant told her he would "kick my ass" and "bust my head."  She indicated Defendant had violent tendencies.  Upon conviction, Defendant was sentenced to one year probation.

7. On April 5, 1994, Defendant, age twenty-eight, was arrested and charged in Adams County, Colorado, Court with one count of felony distribution of a controlled substance and one count of conspiracy to distribute a controlled substance. Defendant reportedly sold $20.00 worth of cocaine to a confidential informant. A bench warrant issued in September 1994 and remains active.

8. On July 28, 1994, Defendant was arrested and charged in federal court with the instant offense of unlawful possession with intent to distribute and distribution of more than five grams of cocaine base. The distribution reportedly took place on November 3, 1992.[4] A jury found Defendant guilty of the charge in October 1994. Defendant has been incarcerated since that time.

As a result of the foregoing, the sentencing guidelines placed Defendant in the career offender category because he was at least eighteen years of age at the time of the instant offense, the instant offense was a controlled substance offense, and he had at least two prior felony convictions involving either crimes of violence or controlled substances. See U.S.S.G. § 4B1.1. Defendant's status as a career offender resulted in an offense level of 37. See Caldwell I, 1996 WL 185749 at *6-7. Coupled with a criminal history category of VI, the offense level resulted in a guideline range of 360 months to life imprisonment. See id.

On remand from Caldwell I, the district court held three separate sentencing hearings. At the first hearing, the court expressed its disagreement with our decision in Caldwell I:

---

[4] The factual details surrounding Defendant's arrest and conviction for the instant offense are fully reported in Caldwell I, 1996 WL 185749 at *1-3.

5

My position is that I think that the sentence that I imposed was very adequate, does not need to be longer. I disagree with the Tenth Circuit order which tells me to impose a longer sentence. I would like to find some way not to do it. I've made that very clear to both attorneys. But nevertheless, I'm bound by the higher court; and if the attorneys cannot work out some agreement, I am bound to increase that sentence. So I would hope that maybe you've talked about this case and can figure out some solution that will solve the problem.

At the second hearing, the district court reiterated its position after learning

the parties could not reach an agreement:

I was hoping very much that you folks could come to some sort of an agreement so I would not have to resentence Mr. Caldwell, as I was ordered to do by the Tenth Circuit. The sentence I originally gave him, which was the 262 months, it appeared to the Court was a fair and just sentence. The Tenth Circuit Court of Appeals disagreed with me and ordered me to resentence him to 360 months–well, 360-life, . . . so we're talking about 360. And I haven't made any–I've been quite frank that I really disagree with the Tenth Circuit. I think it should be 262; but if I'm under orders to resentence him, that's what I have to do.

After further discussion, the court granted Defendant a brief continuance to file a renewed

motion for downward departure based on Koon v. United States, 518 U.S. 81 (1996), the

Supreme Court's decision outlining the proper analysis for departure decisions.

At the third hearing, the district court, as previously noted, concluded that

Defendant was not a career offender within the meaning of U.S.S.G. § 4B1.1, and

thus applied § 4A1.3 to reduce Defendant's offense level from 37 to 28, the applicable

offense level without the career offender enhancement. Together with a criminal history

category of VI, an offense level of 28 resulted in a guideline range of 140-175 months

imprisonment. The district court sentenced Defendant to 175 months imprisonment.

6

## II.

The Sentencing Reform Act of 1984, as amended, 18 U.S.C. §§ 3551-3585, 28 U.S.C. §§ 991-998, authorizes a district court to depart from an applicable sentencing guideline range in cases where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). See also U.S.S.G. § 4A1.3 (permitting departure when "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history or likelihood of recidivism"). In promulgating the guidelines, the Commission explained that it–

> intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S.S.G. ch. 1, pt. A, intro. comment. 4(b).

Potential departure factors "cannot, by their very nature, be comprehensively listed and analyzed in advance." U.S.S.G. § 5K2.0. While the Commission lists certain factors that may or may not make a case atypical and labels them as encouraged or discouraged bases for departure, see U.S.S.G. ch. 5, pt. K, in the end the guidelines–

> place essentially no limit on the number of potential factors that may warrant a departure. The Commission set forth factors courts may not consider under any circumstances but made clear that with those exceptions,

7

it does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.

Koon, 518 U.S. at 106 (internal quotations and citations omitted).[5]  In deciding whether unmentioned factors, as opposed to encouraged and discouraged factors, take a case out of the guidelines' "heartland," however, the district court "must bear in mind the Commission's expectation that departures based on grounds not mentioned in the guidelines will be "'highly infrequent.'"  Id. at 96 (quoting U.S.S.G. ch.1, pt. A, p. 6 (1995)).

In departing downward from the career offender guideline under § 4A1.3, the district court must justify its finding that a defendant's career offender status "significantly overstates" the seriousness of his criminal history or likelihood of recidivism.  United States v. Collins, 122 F.3d 1297, 1304 (10th Cir. 1997).  "As with all departure decisions, the district court should consider all of the factual circumstances that bear upon a defendant's criminal history and likelihood for recidivism, but the district court may not rely on any impermissible departure factors."  Id.  Impermissible factors include (1) forbidden factors, (2) discouraged factors that are not present to some exceptional degree, and (3) encouraged factors

---

[5]  The guidelines set forth the following "forbidden" factors that never can be bases for departure.  U.S.S.G. § 5H1.10 (race, sex, national origin, creed, religion, socioeconomic status); id. § 5H1.12 (lack of guidance as a youth); id. § 5H1.4 (drug and alcohol dependence); id. § 5K2.12 (economic hardship).

8

already taken into account by the applicable guideline that are not present to some exceptional degree. United States v. Benally, ___ F.3d ___, ___, 2000 WL 743673 at *3 (10th Cir. 2000).

Koon instructs us to review a district court's decision to depart from the applicable guideline sentencing range under a unitary abuse of discretion standard. Collins, 122 F.3d at 1302 (citing Koon, 518 U.S. at 100). While the question of whether a factor is a permissible basis for departure under any circumstance is a question of law, the abuse of discretion standard includes review to ensure that erroneous legal conclusions did not guide the district court's discretion. Koon, 518 U.S. at 100. When the question before us is largely factual, such as whether the case is "so unusual" as to remove it from the "heartland" of cases, our review is most deferential. Collins, 122 F.3d at 1302. With this background in mind, we now turn to an analysis of the district court's decision in this case to depart downwards from Defendant's applicable sentencing guideline range.

## III.

The district court relied on the following factors to conclude that Defendant fell outside the "heartland" of career offenders: (1) Defendant's young age at the time of his prior convictions; (2) the relatively small quantities of drugs involved in the instant and prior offenses; (3) the prior lenient sentences imposed on Defendant; and (4) the lesser sentences of his co-defendants. The Government appears to acknowledge that the factual circumstances on which the district court relied to depart downwards from the career

9

offender guideline range may be permissible departure factors in certain instances.

See Benally, ___ F.3d at ___, 2000 WL 743673 at *3 (initial question is whether specific circumstances relied on by the district court are permissible under the guidelines). Rather, the Government contends the factual circumstances on which the district court relied to depart from the guidelines in this case are not so unusual, alone or in combination, as to place Defendant outside the "heartland" of career offenders and do not justify the court's downward departure. See Koon, 518 U.S. at 98 (before departing from the guidelines, a district court must find certain aspects of the case "unusual enough" for it to fall outside the "heartland" of guideline cases). We agree.

A.

As one basis for departure from the career offender guideline, the district court cited the relatively young age at which Defendant committed his prior offenses. U.S.S.G. § 5H1.1 explicitly states, however, that "[a]ge (including youth) is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." (emphasis added).[6] Because age is not ordinarily relevant to the sentencing decision, it is a "discouraged" factor which can support departure "only in combination with other circumstances of a defendant's criminal history." Collins, 122 F.3d at 1306.

---

[6] The only example the Commission gives as to when age might justify a downward departure involves post-offense considerations: "Age may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration." U.S.S.G. § 5H1.1.

The district court may rely on the age factor only if it is present to an "exceptional degree" or in some other way makes the case different from the ordinary case. Id. at 1307.

After reviewing the record, we conclude that the district court abused its discretion in finding that Defendant's age renders this case different from the "heartland" of career offender cases. Defendant has committed crimes throughout his adult life, excepting periods when he was incarcerated. Since Defendant turned eighteen years of age in 1983, he has spent nearly every year of his life either in prison or committing crimes. As previously noted, Defendant's past crimes include (1) receiving stolen property in 1983 at age eighteen (an incident involving violence against the victim), (2) felony robbery in 1984 at age nineteen (another incident involving violence including a threat to kill the victim), (3) drug trafficking in 1985 at age twenty, and (4) drug trafficking in 1987 at age twenty-one. Defendant was released from prison on his 1987 conviction in 1991 and committed the instant crime in 1992. In 1994, Defendant again was charged with drug trafficking, a charge which has yet to be resolved.

Defendant has been imprisoned on the instant offense since 1994. The only sustained breaks in Defendant's criminal conduct have occurred while he was incarcerated. Nothing in the record before us suggests Defendant's age at the time of the commission of the foregoing crimes bears upon his likely recidivism to any exceptional degree or places him outside the "heartland" of career offenders, nor

11

does consideration of Defendant's age lessen the seriousness of his offenses.

B.

As another basis for departure, the district court cited the relatively small quantities of drugs involved in Defendant's instant and prior drug trafficking convictions. In Collins, 122 F.3d at 1308, we suggested that the "relatively minor nature" of a defendant's prior convictions, an unmentioned guideline factor, may be considered in addressing a departure motion from the career offender guideline under U.S.S.G. § 4A1.3.[7] See Koon, 518 U.S. at 96 (stating that departures based on factors unmentioned in the guidelines will be "highly infrequent."). We did not, however, endorse the proposition that a small quantity of drugs involved in current or prior criminal offenses alone could justify a downward departure. See United States v. Tejeda, 146 F.3d 84, 87 (2d Cir. 1998) (holding that a "meager" quantity of a controlled substance is not a basis for a downward departure from the career offender guideline).

Defendant in this case has not two, but three prior convictions which distinguish him as a career offender under U.S.S.G. § 4B1.1–two cocaine trafficking convictions and one armed robbery conviction. All three crimes occurred within ten years of the

---

[7] In Collins, 122 F.3d at 1308, we concluded the district court acted within its discretion in deciding that Collins' 1986 conviction for possession of marijuana with intent to distribute, necessary to render him a career offender, exaggerated the seriousness of his criminal history and likelihood of recidivism because Collins was sixty-four years of age and infirm at the time of sentencing, and he committed the crime over ten years prior to commission of the present drug trafficking offense.

12

instant crime. The instant crime involved the sale of approximately one ounce of cocaine base, more than five times the amount required to trigger the statutory five to forty year sentencing range without consideration of Defendant's criminal history. See 21 U.S.C. § 841(b)(1)(B)(iii). The career offender guideline seeks consistent treatment of all who fall within its purview. "Allowing individual district judges to decide what amount of drugs is small would undermine the consistency goal; what is small to one judge may not be so small to another." United States v. Brown, 23 F.3d 839, 842 (4th Cir. 1994) (holding that the Commission adequately considered drug quantities in drafting the guidelines). We need not now decide whether the quantity factor may ever be relied upon together with other factors in an unusual case to justify a departure from the career offender guideline. Suffice it to say that this is not the unusual case and the district court abused its discretion in relying on the drug quantity factor to depart from the guidelines.

C.

As another basis for downward departure, the district court relied on the "lenient sentences" Defendant received from the state courts for his past criminal misconduct. In Collins, 122 F.3d at 1307, we stated a district court "could conclude that a defendant who received a 'relatively lenient' sentence for a predicate conviction has a less serious criminal history than a career offender whose predicate convictions resulted in lengthy periods of incarcerations." In contrast to Collins, the guidelines discuss prior lenient

13

sentences as a permissible basis for an <u>upwards</u> departure:

> [A] defendant with an extensive record of serious, assaultive conduct who had received what might now be considered extremely lenient treatment in the past might have the same criminal history category as a defendant who had a record of less serious conduct. Yet, the first defendant's criminal history clearly may be more serious. This may be particularly true in the case of younger defendants (e.g., defendants in their early twenties or younger) who are more likely to have received repeated lenient treatment, yet who may actually pose a greater risk of serious recidivism than older defendants.

U.S.S.G. § 4A1.3 comment. (backg'd.). Because the guidelines contemplate an upward departure for prior lenient treatment, we believe that, at the very least, such treatment without explanation of some mitigating factor or factors which led to such treatment is insufficient to justify a downward departure from the career offender guideline under <u>Collins</u>.

In this case, Defendant was sentenced to three years probation, eventually revoked, for each of his first two crimes as an adult: misdemeanor receipt of stolen property and felony robbery. Defendant likewise was sentenced to three years probation for his first felony drug trafficking offense, which too was subsequently revoked. Defendant's second felony drug trafficking offense resulted in a sentence of eight years imprisonment. Still another drug trafficking charge remains pending against Defendant. At sentencing, the district court surmised that Defendant's prior sentences reflected some unspecified mitigating factor in Defendant's favor. We believe, however, that the district court "exceeded the bounds of permissible choice in the circumstances," <u>Collins</u>, 122 F.3d

14

at 1305, and thus abused its discretion in relying on Defendant's past sentencing pattern without more to depart downward from the career offender guideline.

We believe the sentencing guidelines amply instruct the district court on how to handle Defendant's previous criminal misconduct. In drafting the career offender provisions of the guidelines, the Sentencing Commission has implemented the Congressional directive that career offenders who are "eighteen years old or older" be sentenced "to a term of imprisonment at or near the maximum term authorized." 28 U.S.C. § 994(h). According to the Commission: "A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence." U.S.S.G. ch.4, pt. A, intro. comment.

D.

Finally, in departing downward from the career offender guideline, the district court referred to the disparity of sentences between Defendant and two co-defendants involved in the drug transaction giving rise to the instant charge. To eliminate disparities in sentencing nationwide, a district court should consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But a mere difference between co-defendants' applicable guideline ranges will not justify a departure. United States v. Gallegos, 129

15

F.3d 1140, 1143 (10th Cir. 1997). In <u>Gallegos</u>, we explained that "a departure based on a disparity between co-defendants is not justified when the sentences are dissimilar because of a plea bargain." <u>Id.</u> at 1144.

In this case, Defendant was not similarly situated to his co-defendants. His co-defendants pled guilty and agreed to cooperate with the Government, while Defendant did not. <u>See</u> <u>Caldwell I</u>, 1996 WL 185749 at *1. Because any disparity between Defendant's and his co-defendants' sentences was explicable, the district court abused its discretion in departing from the career offender guideline based upon disparity in sentencing. <u>See</u> <u>Gallegos</u>, 129 F.3d at 1144.

IV.

The purpose of U.S.S.G. § 4A1.3 is to allow a district court to deviate from the otherwise applicable guideline range where a defendant's criminal history, likelihood of recidivism, or both, differ <u>significantly</u> from the typical offender for whom the Sentencing Commission formulated the applicable criminal history category. <u>Collins</u>, 122 F.3d at 1304. "'[A] belief by the sentencing judge that the punishment set by the Commission is too severe or that the guidelines are too inflexible may not be judicial grounds for departure under the sentencing system mandated by Congress.'" <u>United States v. Bowser</u>, 941 F.2d 1019, 1030 (10th Cir. 1991) (Baldock, J., dissenting in part) (quoting <u>United States v. Studley</u>, 907 F.2d 254, 260 (1st Cir. 1990)). Because his case is not so unusual or atypical, Defendant does not fall outside the "heartland" of career

16

offenders. Accordingly, this cause is remanded and the district court is instructed consistent with this opinion to resentence Defendant within a guideline range of 360 months to life imprisonment.

REMANDED.